## Salem

KATHY B. UMBARGER

v.

VIRGINIA EMPLOYMENT COMMISSION, et al.

No. 0307-90-3

Decided April 30, 1991

COUNSEL

Paul G. Beers (Client Centered Legal Services of Southwest Virginia, Inc., on briefs), for appellant.

Patrice T. Johnson, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee Virginia Employment Commission.

No brief or argument for appellee Glenn Roberts Tire and Recapping.

OPINION

**KOONTZ, C.J.**—This appeal is from a February 16, 1990 final order of the Circuit Court of Wise County affirming the Virginia Employment Commission's ruling that, in accordance with Code § 60.2-618(1), Kathy B. Umbarger, appellant, was disqualified from receiving unemployment benefits based on her separation from Glenn Roberts Tire and Recapping, Inc. The commission found Ms. Umbarger's unemployment resulted from her own decision to quit her job without exhausting the available reasonable alternatives. On appeal, Ms. Umbarger argues the commission erred, as a matter of law, in concluding she voluntarily left her job without good cause. We agree.

If supported by the evidence, the commission's findings of fact are conclusive on review. *Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, *aff'd en banc*, 9 Va. App. 225, 385 S.E.2d 247 (1989). However, the issue of whether an employee has refused suitable work without good cause is a mixed question of law and fact reviewable by this court on appeal. *See Johnson v. Virginia Employment Comm'n*, 8 Va. App. 441, 447, 382 S.E.2d 476, 478 (1989).

From November 28, 1978 until her resignation on August 8, 1988, Ms. Umbarger worked as a bookkeeper for Glenn Roberts Tire and Recapping, ultimately earning $5.10 per hour. Glenn

Roberts Tire and Recapping has two stores, one in Big Stone Gap and one in Norton, and is owned by Appalachian Tire Products in Charleston, West Virginia. During the latter part of her employment, Ms. Umbarger became increasingly anxious about the future of her job since the business was doing poorly. On July 1, 1988, the manager of the Big Stone Gap store retired. Shortly thereafter, the service manager of this store resigned, and, with three male employees from the service department, started his own business. In an unsuccessful attempt to retain some of those employees, Glenn Roberts offered them raises but they declined the offers. As a result of those departures, the Glenn Roberts store in Big Stone Gap was left with one male employee in the service department and Ms. Umbarger in the office.

Subsequently, a salesman from the Norton store was made manager of the Big Stone Gap store. The new manager retained sales responsibilities that required him to be away from the Big Stone Gap store on a regular basis. During the latter part of July and without notice to Ms. Umbarger, Glenn Roberts hired Tim Mack to oversee inventory at the Big Stone Gap store and potentially become a store manager. Mack was paid $5.50 per hour for this newly created position titled "Supervisor in Inventory Control." Mack had prior inventory control experience at Westmoreland Coal Company[1] where he recently had been laid off, but no prior experience in the tire business.

Ms. Umbarger was displeased with the fact that Mack was doing some of the work that she had performed for Glenn Roberts for nearly the ten previous years. On August 8, 1988, she discovered Mack was earning forty cents per hour more than she was earning. Upon returning from lunch that day, Ms. Umbarger approached Leonard Canfield, Glenn Roberts' operations manager for the two stores. She demanded an explanation of the pay differential. Canfield told her that Mack was in a different classification than her and would possibly become store manager someday. She responded that she did not think it was fair and demanded a pay raise, which Canfield told her conditions would simply not permit. At that point, Ms. Umbarger told Canfield she felt she was the victim of sex discrimination and left the store. The next day she

---

[1]   The record only states Tim Mack had previous inventory control experience during his employment at "Westmorcland," but the appellant's brief indicates he was employed by Westmoreland Coal Company.

removed her personal belongings and filed her claim for unemployment compensation.

Based on the record of a hearing conducted by an appeals examiner, the Virginia Employment Commission entered an opinion on November 7, 1988, finding that Ms. Umbarger failed to establish "she was, in fact, being discriminated against when the male employee was hired." The commission then held Ms. Umbarger voluntarily left work without good cause since she did not press discrimination claims with "appropriate agencies" while she continued working at Glenn Roberts. On review, the circuit court found that, although Ms. Umbarger "felt she was underpaid and discriminated against in view of the recently hired higher paid male employee, she did nothing more than talk briefly with her employer's representative, request a raise, and complain about discrimination." Thus, the court held Ms. Umbarger voluntarily quit her job without good cause because she "precipitately" quit her job when she could have continued her employment and pursued other alternatives, including additional conferences with her employer.

An individual is disqualified from receiving unemployment benefits if the commission finds that individual voluntarily[2] left work without good cause. Code § 60.2-618(1). The corollary to that rule is that an individual may receive unemployment benefits if the commission finds that the individual voluntarily left work with good cause. The determination of what constitutes "good cause" is a mixed question of law and fact, and therefore is subject to review on appeal. *See Johnson,* 8 Va. App. at 447, 382 S.E.2d at 478; *Israel v. Virginia Employment Comm'n,* 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988). In *Lee v. Virginia Employment Comm'n,* 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985), we considered the requirement of "good cause" in the context of an employee who voluntarily leaves employment and stated: "[B]efore relinquishing his employment . . . the claimant must have made every effort to eliminate or adjust with his employer the differences or conditions of which he complains. He must take those steps that could be reasonably expected of a person desirous of retaining his employment before hazarding the

---

[2] In the present case, neither party raises the issue of whether Ms. Umbarger voluntarily left her employment. Therefore, we will not address the issue on appeal but rather assume she did so.

risks of unemployment." *Id.* In other words, a claimant must take all reasonable steps to resolve his conflicts with his employer and retain his employment before voluntarily leaving that employment.

The circuit court relied upon our decision in *Lee* in affirming the commission's ruling that Ms. Umbarger was disqualified from receiving unemployment benefits. Also, both parties rely on *Lee* in support of their arguments. In *Lee*, the claimant entered a written agreement pursuant to federal regulations, thereby settling a grievance filed against his employer, the General Services Administration (GSA). When GSA failed to abide by the agreement, the claimant complained to his supervisors who refused to address his complaint. Finally, the claimant resigned his position believing he had no further method of enforcing the agreement. However, the federal regulations established a grievance procedure that provided for the enforcement of such agreements through notification to the Regional Director of the Federal Labor Relations Authority (FLRA). Instead of attempting to have FLRA intercede on his behalf, the claimant chose to terminate his employment. On appeal, the claimant argued he had good cause to leave his employment and was not required to pursue administrative remedies because the GSA did not consider the agreement binding. We disagreed and held that the claimant lacked "good cause to terminate his employment when an available remedy for that breach was ignored." *Lee*, 1 Va. App. at 86, 335 S.E.2d at 107.

The "good cause" determination in *Lee* was limited to whether the claimant exhausted reasonable steps to eliminate or adjust with his employer the differences or conditions of which he complained. The reasonableness of the claimant's dispute with his employer was not an issue. Nothing in *Lee* was intended to suggest that an employee can rely upon "good cause" to voluntarily terminate employment where the differences with his or her employer or the conditions of which he or she complains are based solely upon an unreasonable and purely subjective perception of the employee. Rather, when determining whether good cause existed for a claimant to voluntarily leave employment, the commission and the reviewing courts must first apply an objective standard to the reasonableness of the employment dispute and then to the reasonableness of the employee's efforts to resolve that dispute before leaving the employment. In making this two-part analysis, the

claimant's claim must be viewed from the standpoint of a reasonable employee. *Johnson*, 8 Va. App. at 452, 382 S.E.2d at 481 (citing *Lee*, 1 Va. App. at 86, 335 S.E.2d at 107). "Factors that . . . are peculiar to the employee and her situation are factors which are appropriately considered as to whether good cause existed . . . ." *Id.* at 451, 382 S.E.2d at 481.

In the present case, the commission and Glenn Roberts contend Ms. Umbarger's evidence fails to show she had no reasonable alternative except to quit her job. Instead, they argue she could have sought assistance from some human rights organization, such as the Equal Employment Opportunity Commission, or contacted Glenn Roberts' owner, Appalachian Tire Products, while she remained in her job. Thus, the appellees assert Ms. Umbarger is not entitled to unemployment benefits since she did not take those steps. In response, Ms. Umbarger contends that, under the totality of the circumstances, it was reasonable for her to believe Glenn Roberts was discriminating against her based on her sex and, therefore, she did not have to pursue relief from an outside agency before voluntarily terminating her employment.

We interpret the circuit court's finding that Ms. Umbarger "felt she was . . . discriminated against in view of the recently hired higher paid male employee" as a determination that she reasonably believed she was a victim of sexual discrimination. The record supports such a determination. Without notifying her or allowing her to apply, Glenn Roberts hired a male, Tim Mack, who lacked any apparent experience in the tire business, to fill a newly created position that entailed performing many of her current duties. Mack's starting salary was forty cents per hour more than Ms. Umbarger's salary even though she had been employed at Glenn Roberts for nearly ten years. Finally, she was denied a raise after Glenn Roberts recently had offered several male employees raises. The combination of these factors demonstrates the reasonableness of Ms. Umbarger's belief that she was the victim of sexual discrimination. The determination that Ms. Umbarger reasonably believed that she was a victim of sexual discrimination negates an assertion that her belief was a purely subjective perception on her part, even though she may have erroneously held this belief. Consequently, the commission's finding in this case that Ms. Umbarger did not demonstrate she was in fact discriminated against is immaterial.

Based upon the initial determination that Ms. Umbarger reasonably believed she was being discriminated against, we also must decide whether she took those steps that could be reasonably expected of a person desirous of retaining her employment. Unlike *Lee*, there is no evidence that Ms. Umbarger had the benefit of an established, designated procedure for addressing employee grievances. The evidence shows that Glenn Roberts was owned by an out-of-state corporation, Appalachian Tire Products, and that Mr. Canfield, the operations manager in charge of the two Glenn Roberts stores, was one of the top officers, if not the top officer, in Glenn Roberts available to review Ms. Umbarger's complaint. Nothing in the record indicates or suggests that Appalachian Tire Products took an active role in the management of Glenn Roberts or in any way oversaw employee affairs. In a situation such as this, we find, as a matter of law, that Ms. Umbarger exhausted all reasonable alternatives within Glenn Roberts to resolve her complaint of discrimination when she confronted Mr. Canfield and he failed to respond to that complaint. Further, we find it is unreasonable to require an aggrieved employee, such as Ms. Umbarger, to seek relief through an out-of-state parent corporation, particularly when that parent corporation is not shown to be actively involved in the management of its subsidiary. Finally, based on her reasonable belief of an unlawful act by the employer, we find Ms. Umbarger was not required to seek assistance from an undesignated agency or organization, such as the Equal Employment Opportunity Commission, in order to establish "good cause" to terminate voluntarily her employment with Glenn Roberts.

Based on our findings, we hold Ms. Umbarger is not disqualified from receiving unemployment benefits. Accordingly, the decision of the circuit court is reversed and the case is remanded for entry of an order consistent with this opinion.

*Reversed and remanded.*

Benton, J., and Duff, J., concurred.