COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Agee and Senior Judge Coleman


GARY J. STASKO

                                            MEMORANDUM OPINION*
v.    Record No. 2835-00-2                      PER CURIAM
                                             APRIL 24, 2001
VIRGINIA EMPLOYMENT COMMISSION AND
 VAN YAHRES TREE COMPANY, INC.


          FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                      Edward L. Hogshire, Judge

              (Gary J. Stasko, pro se, on brief).

              (Mark L. Earley, Attorney General; Lisa J.
              Rowley, Assistant Attorney General; Donald G.
              Powers, Assistant Attorney General;
              Francis McQ. Lawrence; St. John, Bowling &
              Lawrence, on brief), for appellees.


     Gary J. Stasko contends that the Circuit Court of the City of

Charlottesville (trial court) erred in affirming a decision of the

Virginia Employment Commission (Commission) that disqualified him

from receiving unemployment compensation benefits.  Stasko argues

that the Commission wrongly determined that he left employment

with Van Yahres Tree Company, Inc. (Van Yahres) without good

cause.  Upon reviewing the record and the briefs of the parties,

we conclude that this appeal is without merit.  Accordingly, we

summarily affirm the trial court's decision.  See Rule 5A:27.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

"[I]n any judicial proceedings 'the findings of the commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.'" Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988) (citation omitted). "In accord with our usual standard of review, we 'consider the evidence in the light most favorable to the finding by the Commission.'" Wells Fargo Alarm Servs., Inc. v. Virginia Employment Comm'n, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1997) (citation omitted).

So viewed, the evidence established that Stasko worked for Van Yahres as an arborist and crew leader from February 18, 1996 to January 12, 1999. When Stasko was first hired, Van Yahres paid him $10 per hour. In November 1996, Van Yahres began paying Stasko wages on a salaried basis instead of an hourly basis. Van Yahres initially paid Stasko $32,000 per year, and by January 1999, his pay had risen to $35,000 per year. All other crew leaders with the company were paid hourly wages. Van Yahres also paid Stasko's health insurance premiums and gave him a total of three weeks vacation and sick leave annually. The company allowed Stasko to use their trucks for personal use.

On or about January 11, 1999, Van Yahres changed the method of payment of Stasko's wages from a salaried rate back to an hourly rate. At a hearing before the appeals examiner, David Rosene, Sales Manager for Van Yahres, testified that neither

-

Stasko nor the company had been "happy" with the "way things were going with his salary." After several days of discussion with Stasko, Van Yahres decided that an hourly pay rate was "the better way to go." Van Yahres converted Stasko's annual salary to an hourly wage of $15.50 per hour based on the average number of hours he worked per week in the previous year. The company also guaranteed Stasko would have forty hours of work per week in the winter, with additional overtime hours as they were available in the summer months.

Rosene stated that Stasko could earn more money at the hourly wage rate than he had earned while on salary. Rosene also testified that, other than changing the method of wage payment, there were no changes made with regard to Stasko's benefits or job duties. Stasko would also continue to report to the same supervisor. Rosene testified Stasko advised the company that he was not willing to work at the hourly wage rate, and he quit after giving about "five minutes" notice to the company. Rosene also stated that Stasko had had some "philosophical disagreements" with his immediate supervisor, and Rosene was unsure whether that was a factor in Stasko's decision to quit.

Stasko testified that he believed the change in method of payment was a demotion and involved a "lot of risk." Stasko had perceived his position with the company as one of "equal footing" with the officers of the company, and he stated the change to hourly pay was "a penalty." He testified that going from salaried

-

to hourly wages "hurt."  Stasko also testified that, after Van Yahres changed the method of his wage payment, the officers of the company criticized him and attempted to "squeeze" him out of the company.

Stasko quit his job on January 12, 1999, without having secured other employment.  He applied for unemployment benefits, and he indicated on the Commission claim for benefits form that his reason for separation was that he "voluntarily quit."  Stasko also wrote in the explanatory remarks portion of the form, "Demotion contrary to company success."

The Commission denied Stasko's application for unemployment benefits.  On this appeal, Stasko contends the trial court erred in affirming the ruling of the Commission.  He argues that the work environment had become hostile, and the officers attempted to "squeeze" him out of the company.

Code § 60.2-618(1) states that "[a]n individual shall be disqualified for benefits upon separation from the last employing unit . . . if the Commission finds such individual is unemployed because he left work voluntarily without good cause."  "Determining whether an employee voluntarily quit without good cause is a mixed question of law and fact reviewable on appeal."  Snyder v. Virginia Employment Comm'n, 23 Va. App. 484, 491, 477 S.E.2d 785, 788 (1996).  Determining good cause requires a two-part analysis.  See id. at 491, 477 S.E.2d at 788.  First, it must be determined whether the employee's dispute with his

-

employer is reasonable.  If the dispute is reasonable, then it must be determined whether the employee made reasonable efforts to resolve the dispute before quitting his employment.  See id.

> "[B]efore relinquishing his employment . . . the claimant must have made every effort to eliminate or adjust with his employer the differences or conditions of which he complains.  He must take those steps that could be reasonably expected of a person desirous of retaining his employment before hazarding the risks of unemployment."  In other words, a claimant must take all reasonable steps to resolve his conflicts with his employer and retain his employment before voluntarily leaving that employment.

Umbarger v. Virginia Employment Comm'n, 12 Va. App. 431, 434-35, 404 S.E.2d 380, 383 (1991) (citation omitted).  An employee may not rely upon his own "unreasonable and purely subjective perception" to justify voluntary unemployment.  Id. at 435, 404 S.E.2d at 383.

The record supports the Commission's finding that Stasko voluntarily quit his position without good cause.  Stasko admitted that his pay and benefits would have remained substantially the same after the change from a salaried wage to an hourly wage. Indeed, he testified that the determination of the hourly wage "wasn't a concern."  The record also showed that Stasko would have had the same job duties, the same benefits, and he would have reported to the same supervisor after the change.  Therefore, as the trial court found, "the proposed restructuring in [Stasko's] pay would have placed [him] in a position that was virtually

-

indistinguishable from his prior position from the viewpoint of annual earnings, fringe benefits, and position in the company's management structure."  Even assuming, arguendo, that these circumstances involved a "reasonable employment dispute," the record shows that Stasko took no measure, reasonable or otherwise, to resolve that dispute before leaving employment.  Cf. id. at 437, 404 S.E.2d at 384.  Accordingly, the Commission did not err in disqualifying Stasko from receiving unemployment benefits.

Affirmed.

-