COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Felton and Senior Judge Coleman
Argued at Richmond, Virginia


JOHN H. LINDEMAN
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1842-03-3                      JUDGE LARRY G. ELDER
                                                    FEBRUARY 24, 2004
VIRGINIA EMPLOYMENT COMMISSION
 AND ORD'S AUTO PARTS, LLC


             FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
                        Humes J. Franklin, Jr., Judge

             Tate C. Love (Black, Noland & Read, P.L.C., on brief),
             for appellant.

             Donald G. Powers, Senior Assistant Attorney General
             (Jerry W. Kilgore, Attorney General, on brief), for appellees.


        John H. Lindeman (claimant) appeals from a decision of the Staunton Circuit Court

affirming the decision of the Virginia Employment Commission (the commission) denying his

claim for unemployment benefits.  On appeal, claimant contends he had good cause for his

voluntary departure from employment with Ord's Auto Parts, LLC (employer), when he

discovered it did not carry the workers' compensation insurance coverage required by law.  We

hold the evidence supports the commission's decision that claimant lacked good cause for

quitting.  Thus, we affirm the circuit court's decision affirming the commission's denial of

benefits.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## BACKGROUND

Claimant worked as a part-time mechanic for employer from April 26, 2000, through October 2, 2001. While at work on September 24, 2001, claimant was injured when a jack handle hit him in the chest. He sought treatment in the emergency room and did not work the next day. When claimant returned to work the following day, he spoke to Christian Ordewald, employer's president. Claimant asked Ordewald if employer had workers' compensation insurance. Ordewald told him employer did not have workers' compensation insurance but that it "would take care of his medical bills" and lost wages if "the doctor suggested that he take a certain amount of time off." Claimant had not previously discussed with employer whether it had workers' compensation insurance. He testified that, prior to his injury, he "had always assumed that if you had three or more employees that you had to have workers' compensation [insurance]. And it was never an issue to be brought up."

When claimant learned employer did not have workers' compensation coverage, he became angry, cursed at Ordewald, and quit his job. Claimant testified that he quit because of employer's failure to carry workers' compensation insurance.

At the time of claimant's injury, employer was under the erroneous impression that it was not required to carry workers' compensation coverage because it did not have three *full-time* employees. Employer obtained workers' compensation coverage about two weeks after claimant quit.

A few days after claimant quit, he telephoned Matthew Ordewald, another officer of the company, and asked for his job back. Claimant indicated he had been unable to find employment elsewhere but expressed no additional concerns about employer's lack of workers' compensation coverage. Matthew Ordewald said he would not be in favor of rehiring claimant

but that he would "confer with [his] brothers." Two weeks later, after having not heard anything from employer, claimant went to employer's "business premises" and spoke to Christian Ordewald. Claimant again inquired whether employer would reinstate him, and Christian Ordewald said he would have to talk it over with his brothers. Claimant did not mention the issue of workers' compensation coverage during that meeting. Claimant was not rehired by employer.

Claimant filed a claim for unemployment benefits. He conceded that he left his employment voluntarily but argued employer's failure to carry workers' compensation insurance constituted good cause for doing so. The commission's appeals examiner concluded claimant lacked good cause for quitting. On appeal to the commission, the special examiner agreed. Claimant then appealed to the circuit court, which upheld the decision of the commission. It concluded that "[claimant] was obliged to gain a basic knowledge of the law so that he could attempt to resolve the dispute with his employer in an orderly fashion. This knowledge could have been obtained simply by contacting the [commission]." It also concluded that "[claimant] did not make 'reasonable efforts to resolve the dispute'" because he did not "engage in a calm business-like discussion with management" before quitting.

Claimant noted this appeal.

II.

ANALYSIS

An eligible employee whose employment is terminated is entitled to unemployment benefits unless the employer proves the employee engaged in conduct that disqualifies him from receiving benefits. Actuarial Benefits & Design Corp. v. Va. Employment Comm'n, 23 Va. App. 640, 644-45, 478 S.E.2d 735, 737 (1996). One such disqualification is voluntary departure from employment. Id. at 645, 478 S.E.2d at 738. If an employer establishes the

- 3 -

employee seeking benefits left his position voluntarily, the burden shifts to the employee to prove that he left the employment for good cause. Id. Absent proof of good cause for the departure, the employee is not entitled to benefits. See id.

Here, the commission found and claimant concedes that he left his employment voluntarily. The issue in dispute is whether he had good cause for doing so. "'[G]ood cause' for an employee to voluntarily leave employment within the intendment of Code § 60.2-618(1) 'has not been specifically defined by the legislature or the Supreme Court.'" Va. Employment Comm'n v. Fitzgerald, 19 Va. App. 491, 493, 452 S.E.2d 692, 693 (1995) (quoting Lee v. Va. Employment Comm'n, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985)). However, this Court has applied a two-part test:

> the commission and the reviewing courts must first apply an objective standard to the reasonableness of the employment dispute and then to the reasonableness of the employee's efforts to resolve that dispute before leaving the employment. In making this two-part analysis, the claimant's claim must be viewed from the standpoint of a reasonable employee. "Factors that . . . are peculiar to the employee and her situation are factors which are appropriately considered as to whether good cause existed . . . ."

Umbarger v. Va. Employment Comm'n, 12 Va. App. 431, 435-36, 404 S.E.2d 380, 383 (1991) (citation omitted) (quoting Johnson v. Va. Employment Comm'n, 8 Va. App. 441, 451, 382 S.E.2d 476, 481 (1989)).

Whether an employee had "good cause" involves a mixed determination of law and fact, applying "an objective standard to the reasonableness" of both the employment dispute and the employee's efforts to resolve it, which is reviewable on appeal. Id. In the absence of fraud, the factual components of that issue are conclusive and binding on appeal if the record contains evidence supporting the commission's findings. Code § 60.2-625(A); see Va. Employment Comm'n v. Gnatt, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, aff'd en banc, 9 Va. App. 225, 385 S.E.2d 247 (1989).

Claimant contends our holding in Umbarger compels the conclusion he had an objectively reasonable basis for believing that, due to employer's failure to have workers' compensation insurance, he was not legally protected against any injuries he had sustained or might sustain while working for employer, even if that belief was erroneous. We disagree.

In Umbarger, the circuit court held the employee reasonably, if erroneously, believed she was the victim of sexual discrimination because, *inter alia*, she was paid at a lower rate than a newer male employee who had been hired to take over many duties that had formerly been hers. 12 Va. App. at 436, 404 S.E.2d at 384. We held the record supported a determination that her belief, even if erroneous, was objectively reasonable, thereby satisfying the first prong of the two-prong test. Id. We also held under the second prong, as a matter of law, that the employee's efforts to resolve the dispute before leaving her employment were objectively reasonable. Id. at 437, 404 S.E.2d at 384. She confronted her supervisor, who was also the regional operations manager, with her concerns about what she perceived to be discrimination. Id. Holding her actions were sufficient under the second prong of the test, we concluded

> it is unreasonable to require an aggrieved employee . . . to seek relief through an out-of-state parent corporation, particularly when that parent corporation is not shown to be actively involved in the management of its subsidiary. Finally, based on [the employee's] reasonable belief of an unlawful act by the employer, we find [the employee] was not required to seek assistance from an undesignated agency or organization, such as the Equal Employment Opportunity Commission, in order to establish "good cause" to terminate voluntarily her employment with [employer].

Id.

Thus, the first prong of the good cause analysis in Umbarger turned on the employee's mistaken belief of *fact* regarding the dispute, which mistake was determined to be objectively *reasonable*. In the current case, by contrast, the first prong of the good cause analysis turns on claimant's incomplete or erroneous understanding of the *law,* which we hold was objectively *unreasonable* under the facts of this case.

- 5 -

Here, claimant understandably was concerned about whether he would be compensated for the chest injury he sustained while working for employer, as well as for any additional injuries he might sustain while working for employer in the future. However, as found by the commission, employer told him it would compensate him for his injuries.

Further, claimant showed at least a basic understanding of workers' compensation principles when he testified he had "assumed" employer carried workers' compensation insurance because it "had three or more employees."[1] Claimant could easily have gained actual knowledge of his legal rights as contained in the Workers' Compensation Act if he had contacted the Workers' Compensation Commission or Employment Commission before voluntarily leaving his employment. Those provisions include Code § 65.2-805 and §§ 65.2-1200-1206. Code § 65.2-805 provides that an employer who fails to obtain workers' compensation coverage required by the Workers' Compensation Act "is liable during continuance of such failure to any employee either for compensation under this title or at law in a suit instituted by the employee against such employer." Such employer is also liable for civil penalties to be assessed by the workers' compensation commission, and the commission may order a non-compliant employer to "cease and desist all business transactions and operations" until it complies with the law. Code § 65.2-805. If a claimant is unable to obtain relief in the manner provided in Code § 65.2-805, any monies to which he is entitled under the Act shall be paid by the Uninsured Employer's Fund established pursuant to Code §§ 65.2-1200-1206.

Here, as found by the commission and supported by credible evidence in the record, claimant became angry with employer when he learned it did not carry workers' compensation

_____

[1] An employer who has three or more employees "'regularly in service . . . in the same business'" in the state, whether full-time or part-time, is subject to the Workers' Compensation Act, including the provisions regarding insurance coverage. See, e.g., Osborne v. Forner, 36 Va. App. 91, 95-97, 548 S.E.2d 270, 272-73 (2001).

insurance. Claimant quit his position without exploring the other statutory avenues through which he would be entitled to compensation for his injury or giving employer a reasonable time in which to comply with the law. On these facts, we hold the court did not err in affirming the commission's decision that claimant's dispute with employer was unreasonable or that he failed to take reasonable steps to resolve the dispute before quitting. Cf. Clark v. Labor & Indus. Relations Bd., 875 S.W.2d 624, 627-29 (Mo. Ct. App. 1994) (holding under similar statutory scheme and facts that injured employee left employment without good cause when he failed to give employer chance to resolve dispute over lack of workers' compensation coverage).

III.

For these reasons, we affirm the circuit court's decision affirming the commission's denial of benefits.

Affirmed.