COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Clements and Haley

MARY P. WALDEMAR

MEMORANDUM OPINION[*]
v.        Record No. 1393-05-2                           PER CURIAM
                                                      DECEMBER 13, 2005
VIRGINIA EMPLOYMENT COMMISSION,
 PHARMACEUTICAL RESEARCH ASSOCIATES
 AND McDONALD'S CORPORATION

FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Richard S. Blanton, Judge

(Robert P. Dwoskin, on brief), for appellant.

No brief for appellees.


Mary P. Waldemar (claimant) contends the Circuit Court of Prince Edward County (trial

court) erred in affirming the decision of the Virginia Employment Commission (Commission)

denying her claim for unemployment compensation benefits.  Claimant contends the Commission

erred in (1) finding that she was not entitled to benefits because she voluntarily quit her job with

McDonald's Corporation (employer) without good cause; and (2) not allowing her husband to

testify.  Upon reviewing the record and the opening brief, we conclude that this appeal is without

merit.  Accordingly, we summarily affirm the trial court's decision.  See Rule 5A:27.

Background

"[I]n any judicial proceedings 'the findings of the commission as to the facts, if supported

by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court

shall be confined to questions of law.'"  Israel v. Virginia Employment Comm'n, 7 Va. App.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

169, 172, 372 S.E.2d 207, 209 (1988) (citation omitted). "In accord with our usual standard of review, we 'consider the evidence in the light most favorable to the finding by the Commission.'" Wells Fargo Alarm Servs., Inc. v. Virginia Employment Comm'n, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1997) (citation omitted).

So viewed, the evidence established that on December 9, 2003, claimant gave birth to a daughter born twelve weeks premature. The infant spent two months in a hospital neonatal intensive care unit and was discharged on February 2, 2004. On June 6, 2004, employer hired claimant as a food service worker.[1] Employer paid claimant $6.00 per hour. Claimant voluntarily quit her job with employer on June 26, 2004. At that time, she was working the evening shift, from 6:00 p.m. to midnight, on a varied weekly schedule.

Claimant testified that she voluntarily quit on June 26, 2004, because on that date, she learned that her current babysitter would not be able to care for her daughter as of July 1, 2004, and she needed to stay home with her infant daughter. Claimant's babysitter was "a local person," who had cared for claimant's daughter in her home where she had no other children. Claimant admitted that she did not request a leave of absence in order to secure a new babysitter or a transfer to another shift. In addition, she did not advertise for another babysitter. Rather, she asked several neighbors if any of them could care for her child, but no one was able to do so. Claimant stated that she did not "feel comfortable having somebody that's a complete stranger watch [her] child with all the problems that she had." Claimant contended that she could not place her child in daycare because her prematurity made her susceptible to becoming sick if exposed to other children. The appeals examiner did not allow claimant's husband to testify after claimant stated that he was there solely to support her testimony.

---

[1] Claimant was previously employed by Pharmaceutical Research Associates until December 2003.

In a letter admitted as an exhibit at the hearing and dated June 25, 2004, Dr. Lori Balaban, claimant's daughter's pediatrician, opined that the infant was more susceptible to illness than full-term infants of her age. Dr. Balaban also opined that it would be appropriate for claimant to stay home with her daughter as she would "get much more stimulation from her mother than another caretaker . . . [and] [f]urther, she is less likely to become ill if she is not exposed to other children in a daycare situation."

In affirming the decision of the appeals examiner denying benefits to claimant, the Commission found as follows:

> The claimant's concerns about her child were legitimate and could have ultimately caused her to quit her job. A finding a [sic] good cause, however, is dependent on her pursuing every reasonable alternative, and she has not shown she has done this. She learned her babysitter was leaving and she gave her employer her notice the same day. She testified the sitter was able to watch her child for at least another six days, and she could have continued to work while looking for another sitter. In addition, she did not request a leave of absence in order to be able to take additional time to look for a sitter. Finally, she had the alternative to call in absent once her sitter was no longer available, to continue to look for a sitter. If she had exhausted all of these avenues and could not find a sitter, she may have proved by a preponderance of the evidence that she had good cause to quit, but because she quit immediately upon learning that her sitter would no longer be available, she has not met that burden of proof. Accordingly, the Commission finds the claimant voluntarily quit her job without good cause and would be disqualified under [Code § ] 60.2-618(1) . . . .

On appeal, the trial court affirmed the Commission's decision.

Analysis

I. Good Cause for Voluntarily Quitting

If an employee voluntarily leaves employment without good cause, that individual becomes disqualified for unemployment compensation. Code § 60.2-618(1). Here, the Commission found and claimant concedes that she left her employment voluntarily. The issue in

dispute is whether she had good cause for doing so. The question of good cause must be considered with a two-part analysis. The Commission and reviewing courts must first apply an objective standard to the reasonableness of the employment dispute and then to the reasonableness of the employee's efforts to resolve that dispute before leaving. Umbarger v. Virginia Employment Comm'n, 12 Va. App. 431, 435, 404 S.E.2d 380, 383 (1990). "In making this two-part analysis, the claimant's claim must be viewed from the standpoint of a reasonable employee. . . . 'Factors that . . . are peculiar to the employee and her situation are factors which are appropriately considered as to whether good cause existed . . . .'" Id. at 435-36, 404 S.E.2d at 383 (citations omitted).

Claimant's conduct does not rise to a level sufficient to satisfy the second part of the Umbarger analysis. "[A]n employee, who for some reason, becomes dissatisfied with his work, must first pursue every available option open to him whereby he might alleviate or correct the condition of which he complains before relinquishing his employment." Lee v. Virginia Employment Comm'n, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985). Claimant quit her job on the same day her babysitter told her that she would no longer be able to care for claimant's daughter. Claimant made no effort to find another babysitter prior to quitting her job, other than contacting a couple of neighbors. She had at least six days from the time she learned she would no longer have her current babysitter, until July 1, 2004, yet she quit on June 26, 2004. She did not request a leave of absence or a shift change in order to allow her time to secure another babysitter. The record does not disclose the required "steps that could be reasonably expected of a person desirous of retaining his [or her] employment before hazarding the risks of unemployment." Id.

Having found that claimant failed the second element of the Umbarger two-part analysis, we need not discuss the first. The Commission and the trial court did not err in disqualifying claimant from unemployment benefits for voluntarily quitting without good cause.

## II. Husband's Testimony

When the appeals examiner asked claimant what the substance of her husband's testimony would be, claimant responded, "he can just verify what the sitter and ah, and about our daughter." Upon concluding claimant's testimony, the appeals examiner stated, "I don't need the testimony of your husband ma'am."

On appeal, the Commission found as follows:

> [S]ince the subsequent employer did not appear at the hearing or offer any testimony to rebut what [claimant] had offered, the Appeals Examiner correctly ruled that [claimant's husband's] testimony was unnecessary. Given that the Appeals Examiner was simply following accepted procedure in conducting an orderly hearing, the Commission must find that his actions did not prevent the claimant from receiving a fair hearing.

Where, as here, claimant indicated before the Commission that her husband's testimony would have been merely corroborative and cumulative of her testimony, which was not rebutted by employer, we find no error in the Commission's decision not to allow such testimony.

For these reasons, we affirm the trial court's decision.

Affirmed.