## CIRCUIT COURT OF FAIRFAX COUNTY

Kathleen C. Hampton

v.

Virginia Empl. Comm'n et al.

May 21, 2013

Case No. CL-2013-4281

BY JUDGE RANDY I. BELLOWS

Pursuant to Va. Code § 60.2-625, Kathleen Hampton asks this Court to review a determination made by the Virginia Employment Commission that disqualified her from unemployment benefits, effective May 27, 2012, in relation to her separation from employment with Public Utilities Reports, Inc. The Commission determined she was disqualified from benefits because she voluntarily left work without good cause. The Court heard oral argument on May 3, 2013, and took the matter under advisement. The Court has considered the briefs of Ms. Hampton and the Commission.

For the reasons discussed below, the Court affirms the decision of the Commission that Ms. Hampton is disqualified from unemployment benefits.

### I. *Standard of Review*

Va. Code § 60.2-625 clearly defines the Court's role in unemployment benefit determinations. "[T]he findings of the Commission as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Va. Code § 60.2-625(A). Because there is no allegation that the findings of fact were fraudulent, the Commission's findings of fact are binding on this Court if supported by the evidence presented.

## II. *Procedural Background and Findings of Fact*

On June 12, 2012, the Virginia Employment Commission ("VEC" or "Commission") disqualified Kathleen Hampton ("Petitioner") from receiving unemployment benefits after the VEC Deputy found that Petitioner voluntarily left her job at Public Utilities Reports, Inc. ("former employer") without good cause. Relying on written statements from Petitioner and her former employer, the Deputy created a record of facts and determined that Petitioner did not exhaust all alternatives before leaving and that she could have continued working while trying to resolve the problem with her direct supervisor. Record ("R.") at 25.

Petitioner appealed the Deputy's determination to an Appeals Examiner. On June 25, 2012, a Notice of Appeal was mailed to all parties. R. 27-28. On June 29, 2012, a Notice of Telephonic Hearing Before an Appeals Examiner was mailed to all parties. R. 37-38. On July 18, 2012, the Appeals Examiner held the Telephonic Hearing and Petitioner was the only party present. R. 130-212 (transcript of hearing). During the hearing, the Appeals Examiner questioned Petitioner, heard her testimony and closing argument, and considered thirteen documentary exhibits, including prior notices, the record of facts as obtained by the Deputy, and additional documentary evidence provided by Petitioner. R. 178-212. The former employer did not appear for the hearing. Ultimately, the Appeals Examiner affirmed the Deputy's Determination disqualifying Petitioner from unemployment benefits, relying on the following findings of fact:

> The claimant worked as a full-time technical legal editor and production manager for Public Utilities Ports [sic], Inc., from February 11, 2008, through April 18, 2012. She worked a variable schedule and earned $51,200.00 per year.
>
> The claimant had recently, around the beginning of 2012, moved into the production manager role in addition to her prior role. She was unhappy because she felt she was doing the work of two people on her time. This would often require her to work more than 40 hours per week, frequently up to as many as 45 hours. The employer made it clear that, in her position, she would not receive overtime, and she should not be working more than 40 hours per week.
>
> The claimant was upset about this lack of additional compensation. She believed that if she worked 40 hours in a week, then she should not have to use vacation time or sick time if she did not report to work, or wanted to take off one of the other days. The employer maintained a different position, under which any sick day or day out of the office would need to be accounted for with paid time off.

The claimant frequently had issues with her direct supervisor [Mr. Phillip Cross], who was a vice president and human resources officer. The supervisor was abrasive and frequently critiqued the claimant's work, which made the claimant feel like she was not fully appreciated at work. The claimant did not take any concerns to the president of the company, because she did not consider him to be part of management.

The relationship between the claimant and the supervisor came to a head on April 18, 2012. The claimant had been out sick for one day earlier in the week, and the supervisor came to her to tell her that she needed to fill out a [Paid Time Off] PTO form for the day that she had missed. The claimant argued that she should not have to do this, because she was going to work at least 40 hours during the remainder of the week. The supervisor explained that this was not the policy of the employer, and it was reiterated that she needed to fill out a PTO form for the day that she missed. The claimant would have to take an unpaid day, because she had already allocated all of her PTO days.

The claimant tried to refer back to all the previous time sheets where she had worked more than 40 hours, but he continued to reiterate that he would need her to put the time in. He stated he did not want the claimant to do the extra hours beyond what was scheduled. He told the claimant that she had other options if she did not want to put the PTO in. The claimant responded, "What?" and then stated, "Oh, like the option to quit?" The claimant then asked the supervisor, "You just don't want me here anymore, do you?" The supervisor said, "No."

The claimant, as she was leaving, stated, "I won't stay where I'm not wanted," and left. One of the coworkers attempted to convince the claimant to stay, but she said she would not stay where she wasn't wanted, and put up with such bullying. The claimant could have continued to work had she filled out the PTO form, and continuing work remained available for the claimant beyond the time when she left the building.

R. 39-40. Petitioner appealed the Appeals Examiner's determination to the Commission, and requested that the Commission grant her request to take additional evidence and testimony, pursuant to Va. Code § 60.2-622 and 16 Va. Admin. Code § 5-80-30(B). R. 47-48. Specifically, Petitioner requested that "a live hearing be held and [four] witnesses be subpoenaed

for questioning by the claimant [including her direct supervisor Phillip Cross]." *Id.*

> Except as otherwise provided by this chapter, all appeals to the commission shall be decided on the basis of a review of the evidence in the record. The commission, in its discretion, may direct the taking of additional evidence after giving written notice of such hearing to the parties, provided: (1) it is shown that the additional evidence is material and not merely cumulative, corroborative, or collateral, could not have been presented at the prior hearing through the exercise of due diligence, and is likely to produce a different result at a new hearing; or (2) the record of the proceedings before the appeals examiner is insufficient to enable the commission to make proper, accurate, or complete findings of fact and conclusions of law.

16 Va. Admin. Code § 5-80-30(B).

On December 4, 2012, the Commission's hearing was held and the Special Examiner considered two issues: first, whether claimant's request for the taking of additional evidence should be granted; and second, whether the claimant left work voluntarily without good cause. The Special Examiner relied on Petitioner's proffer as to what her additional evidence would be and the Record as established by the Appeals Examiner.

The Commission reviewed the Appeals Examiner's findings of fact, determined those findings of fact were supported by the evidence, and adopted those findings into its decision, with a few additions. First, the Commission denied claimant's request to present additional evidence because her request was not warranted under 16 Va. Admin. Code §§ 5-80-30(B)(1)-(2). In its findings of fact, the Commission stated that two separate notices were mailed to Petitioner before the Appeals Examiner hearing that contained "clear and unambiguous instructions relative to what the parties must do in order to participate in the hearing, including that they 'must be prepared to present their case at the time scheduled for hearing before the Appeals Examiner, including all documents and witnesses necessary to your case'." R. 115. The Commission found that the notices "apprised the parties of everything they must do relative to making all necessary arrangements for witnesses or other parties they wished to participate in the hearing. . . ." *Id.*

Second, the Commission affirmed the decision of the Appeals Examiner disqualifying Petitioner from unemployment benefits. The Commission founds that Petitioner left work voluntarily, and failed to prove her burden of establishing good cause. R. 121. "[T]he claimant's own evidence clearly demonstrates that she voluntarily walked off the job that day, rather than

being discharged from employment. The record demonstrates, too, that continuing work would have remained available to her had she not done so." R. 119 (flatly rejecting Petitioner's contention that her supervisor 'provoked' her into quitting). Moreover, the Commission found her supervisor's request reasonable, and that he was "merely trying to get her to follow the employer's policy. . . ." R. 120. Therefore, the Commission found that the "employment dispute" was Petitioner's "ongoing refusal to abide by her employer's reasonable and repeated requests to her regarding the necessity of her recording or documenting her hours of leave from scheduled work," and that this did not constitute good cause for voluntarily leaving work. *Id.* Ultimately, the Commission affirmed the determination that Petitioner voluntarily left work without good cause. R. 122. This petition for judicial review followed.

### III. *Analysis*

On judicial review, Petitioner raises two issues: (1) that she was deprived of her opportunity to cross-examine her former employer because the VEC did not provide specific notice that the employer could "opt out" of the Appeals Examiner's hearing; and (2) that she left her job with good cause, because her employer no longer wanted her to work there and provoked her to leave.

The Court finds that the Appeals Examiner's findings of fact, as supplemented by the Special Examiner for the Commission, is supported by the evidence presented throughout the previous hearings in this case, and, therefore, those facts are binding on this Court. Va. Code § 60.2-625(A). Moreover, the Appeals Examiner and the Commission properly relied on the Record and Findings of Fact as obtained by the VEC Deputy. *Snyder v. Virginia Empl. Comm'n*, 23 Va. App. 484, 488, 477 S.E.2d 785 (1996) ("We hold that the 'Record of Facts Obtained by Deputy' was a part of the record and the documents contained therein were properly considered by both the appeals examiner and the VEC in making their findings of fact."). Specifically, the Court finds that the findings of fact conclusively establish that Petitioner had proper notice for the Appeals Examiner hearing and voluntarily left work without good cause.

### A. *Notice and Opportunity To Present Evidence*

All first level appeals in front of the Appeals Examiner are conducted by telephone conference call, but the parties are permitted to appear in person if they so desire. 16 Va. Admin. Code § 5-80-20(B). Once the Deputy's Determination is appealed, a Notice of Appeal and Notice of Telephonic Hearing Before an Appeals Examiner are mailed to the parties. *Id.* Both notices contain warnings signifying the importance of the hearing, including the following:

> 1. *Importance of the Hearing:* This may be the only hearing at which you can give evidence. If there are further appeals, those appeals may only be a review of the evidence given at this hearing.
>
> 2. *Attendance at the Hearing:* You should come to the hearing. If you do not come to the hearing, the Appeals Examiner will decide the case on the available evidence.
>
> 3. *Witnesses:* If you find it necessary to have a witness testify on your behalf, you must contact him and arrange for his appearance at the hearing. If a subpoena is needed, you should notify the Clerk of the Commission immediately. . .

R. 28, 38.

Petitioner argues that she believed her supervisor "would be at that hearing and believed that all proceedings were conducted as in a court of law and nothing indicated in any of the notices that he could 'opt-out'." Pet.'s Brief at 2 ("Had I known he could Opt-Out, I would have requested a subpoena on him.") *Id.*

In unemployment benefit hearings, there is no absolute constitutional right of cross-examination. *Baker v. Babcock & Wilcox Co.*, 11 Va. App. 419, 427, 399 S.E.2d 630 (1990) ("Neither the Sixth Amendment to the United States Constitution nor article I, § 8, of the Virginia Constitution are implicated in this case. Those constitutional provisions are limited in application to criminal prosecutions."). Under similar facts, where a claimant failed to subpoena his former employer for the first level appeals hearing, the Court of Appeals held that there was no constitutional violation because the claimant himself "failed to subpoena her and pursue cross-examination." *Id.* at 426.

"If claimant did not enjoy the right of confrontation and cross-examination or any of the other rights available to him under the laws and regulations, it was not because they were denied him; it was, insofar as the record discloses, only because he did not pursue them." *Id.* at 427 (citing *Klimko v. Virginia Empl. Comm'n*, 216 Va. 750, 762-63, 222 S.E.2d 559 (1976)). VEC regulations do not require specific notice to claimants that parties may choose not to attend Appeals Examiner hearings. See 16 Va. Admin. Code § 5-80-20(B)(4) (discussing the contents of the hearing notice). Instead, the notice of appeal states that parties "should come to the hearing," otherwise the determination is made solely on the evidence presented. R. 28. The notice also gives proper instruction on how to compel the attendance of witnesses through subpoena. *Id.*

As the Commission stated in its decision, not only could Petitioner's additional evidence "have been presented at that hearing through the exercise of due diligence, [but] the claimant [also] could have requested a postponement of the hearing from First Level Appeals or the Appeals Examiner if she needed any further time to procure any desired, relevant,

or material evidence she wished to present relative to her separation from employment. Rather, she chose the specific documentary materials she wished to submit for that hearing and submitted them to First Level Appeals prior to the hearing. She also participated in the hearing and proffered her testimony relative to separation/qualification issues, within the parameters of the pertinent notice of the hearing." R. 117.

Therefore, the Court finds that Petitioner was not deprived of her right to cross-examine her former employer at the hearing. Rather, she failed to pursue subpoenas for witnesses she wanted to question during the hearing, as outlined in the notices provided by the VEC. The Court finds that the VEC complied with the statutory and regulatory provisions governing notice for appeal hearings, and, therefore, Petitioner was given proper notice to subpoena witnesses before her hearing. Accord *Snyder v. Virginia Empl. Comm'n*, 23 Va. App. 484, 489, 477 S.E.2d 785 (1996) ("To the extent that Snyder now objects to the appeals examiner having proceeded without an employer's representative being present, Snyder could have objected at the hearing or could have subpoenaed a representative of her employer to appear.") (citing *Richardson v. Perales*, 402 U.S. 389, 404, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (holding that claimant was precluded from complaining that he was denied the rights of confrontation and cross-examination because he did not take advantage of the opportunity to subpoena adverse witnesses who had previously submitted reports)); see also *Baker*, 11 Va. App at 427.

## B. Voluntarily Left Work Without Good Cause

A claimant is disqualified from receiving unemployment benefits if it is found that the claimant left work voluntarily without good cause. Va. Code § 60.2-618(1).

> When determining whether good cause existed for a claimant to voluntarily leave employment, the commission and the reviewing courts must first apply an objective standard of reasonableness of the employment dispute and then to the reasonableness of the employee's efforts to resolve that dispute before leaving the employment. In making this two-part analysis, the claimant's claim must be viewed from the standpoint of a reasonable employee. . . . Factors that . . . are peculiar to the employee and her situation are factors which are appropriately considered as to whether good cause existed.

*Umbarger v. Virginia Empl. Comm'n*, 12 Va. App. 431, 435-36, 404 S.E.2d 380 (1991) (citations omitted). Good cause "cannot be established by an employee who quits her job merely because she believes she will eventually be fired. . . . In such cases, the employee 'not the employer'

causes the wage loss." *Smith v. Virginia Empl. Comm'n & Swift Transp. Co.*, 59 Va. App. 516, 521, 721 S.E.2d 18 (2012). Specifically, a personality dispute among coworkers, without more, is not a reasonable employment dispute amounting to good cause to quit voluntarily within the meaning of the Virginia Code. *Vick v. Virginia Empl. Comm'n*, No. 0722-96-2, 1997 Va. App. LEXIS 178 at *9 (Mar. 18, 1997). Rather, "good cause" has previously been established when the circumstances are so substantial, compelling, and necessitous as to leave the claimant no other reasonable alternative than to quit her job. *Phillips v. Dan River Mills, Inc.*, Comm'n Dec. 2002-C (Jun. 15, 1955).

Here, the Commission found that cause of claimant's separation stemmed from her challenge to her direct supervisor's request for submission of a leave form after she returned from taking a sick day. R. 118. The Court affirms the Commission's decision that this was not an objectively reasonable employment dispute under the first prong of *Umbarger*. R. 120; *Umbarger*, 12 Va. App at 435-36. The Court agrees with the Commission that, "while the supervisor may have acted unprofessionally in acknowledging that he did not want her there," he did not fire her that day, and the dispute centered on a common employment policy: "most employers require employees to obtain approval or authorization for overtime before it is worked." R. 120; accord *Vick*, 1997 Va. App. LEXIS 178 at *9 (holding that a personality dispute among coworkers, without more, is not a reasonable employment dispute amounting to good cause to quit voluntarily within the meaning of the Virginia Code). Indeed, the Record of Petitioner's own testimony "upon which this Court properly relies" clearly demonstrates that she left the job voluntarily without a compelling and necessitous reason. Petitioner acknowledged that she "left because [her] boss did not want [her] there." R. 153. Petitioner believed that because her supervisor did not like her, it became a situation "more or less if [she] did not like it . . . [she] could always find the door." R. 154. Therefore, the Court affirms the. Commission's decision that Petitioner's employment dispute was not objectively reasonable. R. 120.

The Court also affirms the Commission's decision that she failed to "exhaust all reasonable alternatives short of quitting to resolve her employment dispute over the employer's leave requirements . . . [and] failed to prove her burden of establishing good cause [for voluntarily leaving work]." R. 121. The Commission found that Petitioner could have complied with her supervisor's request, recorded her time, and continued to work while looking for other jobs. R. 121. In fact, Petitioner did very little to resolve the dispute, and did not even attempt to discuss the matter with the President of the company. R. 121 ("[T]he Commission concurs with the Appeals Examiner in finding it incredible that the claimant did not believe the president had supervisory authority over the vice-president who

was her immediate supervisor."). Therefore, Petitioner's efforts were not reasonable.

## IV. *Conclusion*

The Court affirms the findings of fact and conclusions of law as determined by the Commission that Ms. Hampton is disqualified from unemployment benefits, because the findings of fact conclusively establish that Petitioner had proper notice for the Appeals Examiner hearing and that she voluntarily left work without good cause.

## *Final Order*

For the reasons stated in the Letter Opinion issued today, the Petitioner's Petition for Judicial Review is denied and dismissed with prejudice.