# CIRCUIT COURT OF THE CITY OF NORFOLK

Vernon Q. Battle

v.

Virginia Employment Commission
and Excel Paving Corporation

March 26, 2014

Case No. CL13-8291

By JUDGE MARY JANE HALL

The matter comes before the Court on appeal from a decision of the Virginia Employment Commission (V.E.C.) dated September 25, 2013. For the reasons stated herein, the agency decision is reversed.

## Summary of Proceedings

Vernon Q. Battle filed a claim for unemployment benefits on May 22, 2013, following his release from the hospital after emergency surgery. A Deputy of the Commission found on June 6, 2013, that Battle was qualified for unemployment benefits. His employer, Excel Paving Corp ("Excel"), appealed the Deputy's decision to an Appeals Examiner who conducted a telephonic hearing on July 17, 2013. The Appeals Examiner affirmed the Deputy's decision that Battle qualified for benefits, concluding that he left Excel Paving voluntarily and with good cause. Excel appealed, and a Special Examiner for the Commission reversed the decision of the Appeals Examiner, disqualifying Battle for unemployment compensation. Battle filed his appeal to this Court.

## Findings of Fact

The Commission argues that the Court may consider only those facts recited in the Commission decision at pages 33 and 34 of the Record. It cautions the Court to disregard any additional facts relied upon by Battle.

The Commission's findings of facts relating to Battle's separation from Excel are set out verbatim, as follows.

> The claimant was last employed by Excel Paving, Inc., as an equipment operator, from October 25, 2010. His last day worked was May 17, 2013. At the time of separation, his rate of pay was $13.00 per hour.
>
> On May 18, 2013, the claimant awoke with severe abdominal pain. He went to the emergency room and was diagnosed with a perforated ulcer and immediately scheduled for surgery. The claimant notified his employer he would be absent from work due to illness. The claimant was not discharged at that time and was placed on leave.
>
> The claimant was released from the hospital on May 22, 2013. He then filed his initial claim for benefits on that same day.
>
> The claimant submitted a physician's statement of health, date May 28, 2013. This documentation indicated that he was completely unable to work from May 18, 2013, through May 31, 2013. It further indicated that he was not advised to quit his employment, but was advised to take a leave of absence. The claimant was then released to light duty work as of June 1, 2013.

Record at 33-34.

## Opinion

Virginia Code § 60.2-625 provides that, "In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." An individual is disqualified for benefits if he leaves work voluntarily without good cause. Va. Code § 60.2-618. A "good cause" determination is a mixed question of law and fact and subject to review by the Court on appeal. *Shuler v. Virginia Empl. Comm'n,* 9 Va. App. 147, 149, 384 S.E.2d 122, 124 (1989).

Although the Court agrees that the findings recited in the Commission's decision are supported by evidence, the Court disagrees that those facts support the legal conclusion that Battle left without good cause. The Commission's final fact was "The claimant was then released to light duty work as of June 1, 2013." If Battle could not do his former job and if Excel had no light duty work available, he had good cause to leave that job. Nothing in the Commission's factual recitations shed any light on that question. The failure of the Commission to make any finding in that regard

renders the determination that Battle left without good cause as lacking in evidential support. If the Court is prohibited from reviewing any facts in the record beyond those recited by the Commission, the Court would nonetheless determine that the Commission's good cause decision lacks evidential support.

Because the existence of "good cause" is a mixed question of law and fact, the Court finds that it does have the authority to review additional facts in the record other than those recited in its decision. The Court notes that many reported decisions in which the Court of Appeals reversed the Commission included lengthy factual discussions that departed from factual findings made by the Commission. *See, e.g., Shuler*, 9 Va. App. 147, 384 S.E.2d 122; *Umbarger v. Virginia Empl. Comm'n*, 12 Va. App. 431, 404 S.E.2d 380 (1991); *Johnson v. Virginia Empl. Comm'n*, 8 Va. App. 441, 382 S.E.2d 476 (1989).

The Court has reviewed the testimony in the Record given on July 17, 2013, before the Appeals Examiner to determine what evidence supports the conclusion that Battle's failure to return for light duty work on June 1, 2013, made him ineligible for unemployment benefits.

The testimony more than establishes that Battle tried to maintain contact with Excel over the course of his recovery. Excel's representative admitted that Battle went into the office and spoke to the secretary and contacted his foreman by phone on more than one occasion. "He had told his foreman, Alvin Armstrong, that he had to go into oper — had to have an operation." Record at 51. "[H]e was talking with his foreman and would call him, basically, and tell him, you know, he needed to be off." Record at 52. "He had talked with his foreman . . . there was some conversation about how much longer he was going to be out." Record at 53. "It was just, sort of, word of mouth, I'm going to be out, you know, he was keeping tabs with us, which I appreciate, you know, to let us know that he – you know, he was still interested in employment." Record at 53. "Are you aware that Mr. Battle came into the office and spoke with the secretary? Yes, I am." Record at 58.

Battle testified that he told his employer he was available for light duty:

Q. Did you tell him that you were available for light duty?

A. Yes, ma'am. It ain't no light duty in construction . . . .

Q. Did you tell him . . . that you were released to light duty?

A. Yes.

Q. And what was his response when you told him that?

A. He did not say anything; he just hung the phone up. He just said, "All right," and hung up.

Record at 62, 63.

Nothing in the record suggests that Excel ever offered or told Battle that they had light duty work for him. They certainly had the opportunity to advise him during the many contacts that Battle made, but there is no evidence that they did; and Battle clearly believed that there was no light duty for him to do. That belief is corroborated by the Record of Facts Obtained by Deputy, Record at 13-14. In response to the written question to Excel from the Deputy, "Would light duty work have been available to him," Excel admitted "Typically we do not have light duty work." Record at 14.

When determining whether good cause existed for a claimant to voluntarily leave employment, the Commission and the reviewing courts must first apply an objective standard to the reasonableness of the employment dispute and then to the reasonableness of the employee's efforts to resolve that dispute before leaving employment. In making this two-part analysis, the claim must be viewed from the standpoint of a reasonable employee. *Umbarger*, 12 Va. App. at 435-36, 404 S.E.2d at 383. The consistent position of the V.E.C., "acquiesced in by the General Assembly," has required the employee to "take those steps that could reasonably be expected of a person desirous of retaining his employment before hazarding the risks of unemployment." *Lee v. Virginia Empl. Comm'n*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985).

The Court holds that Battle acted as a reasonable employee would have in his situation. Battle acted under the advice of his doctor and promptly let his employer know his medical limitation. He knew that he could not go back to his former job. No one from Excel informed him that they had a different job that he could do. When he told his foreman of his release to light duty, his foreman hung up on him. A reasonable employee would interpret such a response as negating his opportunity to return to Excel.

Counsel suggested at oral argument that *Umbarger* required more of Battle, that Battle should have actually reported for work when he was released to light duty and given Excel the chance to find something for him to do. In *Umbarger*, the claimant's employer hired a male, who lacked any apparent experience, to fill a newly created position that entailed performing many of the duties that had been claimant's responsibility. The male's starting salary was higher than claimant's salary even though she had been employed for nearly ten years. Further, she was denied a raise after the employer had offered raises to several male employees. After confronting her supervisor and informing him that she believed she was the victim of sex discrimination, she quit.

The Commission determined that Umbarger left employment without good cause because she failed to establish that she was, in fact, being discriminated against. Further, it held that she should have pursued other avenues such as a claim with the Equal Employment Opportunity Commission and additional conferences with her employer and the parent

corporation of her employer. On appeal, the Court of Appeals interpreted the circuit court's finding that Umbarger "felt she was discriminated against" as a determination that she reasonably believed that she had been the victim of sex discrimination. It ruled that the Commission's finding that she had not demonstrated that she was in fact discriminated against was immaterial. The Court further held that she had exhausted all reasonable alternatives to leaving her job when she confronted her supervisor and received no response. *Umbarger*, 12 Va. App. at 437, 404 S.E.2d at 384. The Court of Appeals determined that she was not disqualified from receiving unemployment benefits.

The Court determines that Battle's actions were the equivalent of Umbarger's. Like Umbarger, Battle theoretically could have done more, but the law only requires that reasonable alternatives be exhausted. He acted as a reasonable employee would and did exhaust his available options for maintaining employment with Excel. He reasonably interpreted his foreman's response to the light duty advice as denying the availability of any work for Battle. Battle's medical emergency and resulting limited physical condition constitute good cause for his voluntary leaving his employment with Excel.

The Court holds that the Commission erred in its application of the facts in this case to the law. Because Battle left work voluntarily and with good cause, the Court holds that Battle is not disqualified from receiving unemployment benefits. The Court reverses the decision of the V.E.C. and remands this case to the V.E.C. for a calculation of benefits.