**Salem**

JAMES WHITT

v.

RACE FORK COAL CORPORATION

AND

VIRGINIA EMPLOYMENT COMMISSION

No. 2177-92-3

Decided March 15, 1994

COUNSEL

Mary Wheeling Martelino (Client Centered Legal Services of Southwest Virginia, Inc., on briefs), for appellant.

No brief or argument for appellee, Race Fork Coal Corporation.

James W. Osborne, Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Mary Yancy Spencer, Deputy Attorney General; Richard L. Walton, Jr., Senior Assistant Attorney General; Richard B. Zorn, Senior Assistant Attorney General, on brief), for appellee, Virginia Employment Commission.

OPINION

**WILLIS, J.**—The trial court affirmed the decision of the Virginia Employment Commission denying unemployment compensation benefits to James Whitt on the ground that he left his employment voluntarily without good cause. Code § 60.2-618(1). On appeal, Whitt contends that the trial court erred (1) in applying an incorrect standard of review, (2) in holding that Whitt was not "unemployed" due to his injury, prior to May 15, 1991, and (3) in holding that Whitt left his employment voluntarily without good cause. We find no error and affirm the judgment of the trial court.

Race Fork Coal Corporation employed James Whitt as a loader operator. On March 19, 1991, Whitt injured his back at work. The injury was accepted as compensable, and Race Fork's insurance carrier began paying Whitt workers' compensation benefits for temporary total disability. In April 1991, Race Fork discovered that Whitt was working as a carpenter, a job inconsistent with his disability. Whitt denied working. He claimed that his brother, who is a carpenter, had been mistaken for him. Race Fork's insurance carrier suspended Whitt's workers' compensation benefits.

The insurance carrier informed Whitt that he could pursue his claim before the Workers' Compensation Commission. Alternatively, it offered him a $12,000 lump sum settlement if he released Race Fork from any future liability resulting from his injury and resigned from his employment by Race Fork. Race Fork's personnel manager advised Whitt that if he accepted the settlement, he would thereby surrender ongoing employment, health care, disa-

bility benefits, workers' compensation coverage, and his pension. Whitt's physician had already advised him that he would be able to return to work "shortly." Whitt hoped to obtain employment with another company at a mine near his home. On May 15, 1991, Whitt accepted the settlement and resigned from his employment by Race Fork.

On June 24, 1991, Whitt's treating physician released him to unrestricted employment. Whitt then applied for unemployment compensation. The Virginia Employment Commission denied his claim, holding that he voluntarily left his employment without good cause and was disqualified under Code § 60.2-618(1). Upon review pursuant to Code § 60.2-625(A), the trial court affirmed the commission's decision.

Whitt first contends that the trial court applied the wrong standard of review. He argues that the trial court considered the commission's decision a finding of fact and accorded it conclusiveness under Code § 60.2-625(A). Whether the commission properly disqualified Whitt under Code § 60.2-618 is a mixed question of law and fact. *Shuler v. Virginia Employment Comm'n*, 9 Va. App. 147, 149, 384 S.E.2d 122, 124 (1989). Therefore, a finding of disqualification does not enjoy the deference accorded a finding of fact, but is subject to judicial review.

The record does not support Whitt's contention. The trial court recited the factual findings of the commission and noted the deference required to be given those findings. Then, in light of those findings, it rendered a decision under the applicable rule of law. The trial court specifically held:

> [T]hat the record supports the fact findings by the Commission; that due to the fact that he left work voluntarily without cause pursuant to Virginia Code Section 60.2-618.1 [sic], Petitioner is not entitled to unemployment compensation.

The first clause affirms the fact findings of the commission. The second clause applies the statute.

Whitt next contends that he did not become unemployed by accepting the settlement on May 15, 1991. He argues that he was unemployed before that date due to his injury. He cites Code § 60.2-226(A), which provides, in pertinent part:

> An individual shall be deemed "unemployed" in any week during which he performs no services and with respect to which no wages are payable to him . . . .

Whitt argues that after his injury on March 19, 1991, he performed no services and received no wages. Therefore, he argues, his unemployment resulted from his injury, not from any voluntary act on May 15, 1991. This issue was not preserved for judicial review.

Code § 60.2-625(A) provides, in pertinent part:

> Within ten days after the decision of the Commission . . . has become final, any party aggrieved who seeks judicial review shall commence an action in the circuit court . . . . In such action . . ., the Commission and any other party . . . shall be named a defendant in a petition for judicial review. Such petition shall also state the grounds upon which a review is sought . . . .

Whitt's petition for judicial review, filed in the trial court, presented three issues:

> (1) The determination by the VEC that claimant's separation from his employer was voluntary is an error of law because the separation was initiated by the employer.
>
> (2) The finding of the VEC that the termination, if voluntary, was without good cause is an error of law.
>
> (3) The decision of the VEC discourages private settlement of workers' compensation claims.

The petition for judicial review did not present to the trial court the question whether Whitt's injury caused him to become unemployed. That issue was not before the trial court for decision. We will not entertain it for the first time on appeal. Rule 5A:18.

Finally, Whitt contends that the evidence was insufficient to disqualify him for benefits under Code § 60.2-618(1) because it failed to establish that he left his employment "voluntarily without good cause." We disagree.

The term "voluntary" connotes " '[u]nconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself . . . [r]esulting from free choice.' " An employee's intention to quit may be discerned from words or conduct inconsistent with the maintenance of an employer/employee relationship.

*Shuler*, 9 Va. App. at 150-51, 384 S.E.2d at 124 (citations omitted).

▪ When the insurance company suspended his workers' compensation benefits, Whitt could have pursued a claim for benefits before the Workers' Compensation Commission, which would have determined whether his benefits should continue or cease. Whitt chose, rather, to accept the compromise settlement. In making that decision, he sought the advice of Race Fork's personnel manager, who cautioned him against accepting the agreement, warning that by doing so, he would surrender his job and its related benefits. Whitt made a knowing and voluntary business decision in accepting the settlement instead of pursuing his claim. By freely choosing the settlement, he freely chose its conditions, one of which was that he quit his employment with Race Fork. *See Shifflett v. Virginia Employment Comm'n*, 14 Va. App. 96, 414 S.E.2d 865 (1992). Thus, he voluntarily resigned his employment.

Whitt argues that, assuming he voluntarily quit his employment, the trial court erred in finding that he lacked good cause. He argues that "good cause" exists when necessity, legal duty, family obligations, or other compelling circumstances make an employee decide to leave employment. He argues that had he rejected the settlement, he would have faced litigation; that he had received as income since his injury only two weeks' workers' compensation benefits; that the settlement offered twenty-six weeks' wages; that he did not know when he would be able to return to work; and that he needed the money. He argues that these factors constituted "good cause" to leave his employment.

▪ We find Whitt's argument unpersuasive.

[W]hen determining whether good cause existed for a claimant to voluntarily leave employment, the commission and the reviewing courts must first apply an objective standard to the reasonableness of the employment dispute and then to the

reasonableness of the employee's efforts to resolve that dispute before leaving the employment. In making this two-part analysis, the claimant's claim must be viewed from the standpoint of a reasonable employee. "Factors that . . . are peculiar to the employee and her situation are factors which are appropriately considered as to whether good cause existed . . . ."

*Umbarger v. Virginia Employment Comm'n*, 12 Va. App. 431, 435-36, 404 S.E.2d 380, 383 (1991) (citations omitted). Whitt failed this two-part test. His workers' compensation dispute with Race Fork was susceptible of orderly resolution. It did not require the termination of his employment. Whitt's doctor had advised him that his disability was only temporary, and Race Fork's personnel manager had informed him that a job with full benefits awaited him upon his release to employment. Whitt made no reasonable efforts to resolve the workers' compensation dispute without terminating his employment. The record discloses no effort by him to negotiate that provision of the settlement with the insurance carrier. He chose not to pursue his normal remedies before the Workers' Compensation Commission. Instead, hoping to find another job, he chose the course that he believed was more advantageous to him financially. This record supports the finding that he lacked good cause to terminate his employment.

The judgment of the trial court is affirmed.

*Affirmed.*

Benton, J., and Koontz, J., concurred.