# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Julia A. Jenkins

v.

Virginia Employment Commission
and Frank IX & Sons, Inc.

November 20, 2000

Case No. (Law) 00-70

BY JUDGE EDWARD L. HOGSHIRE

This is an appeal filed under Virginia Code § 60.2-625 for judicial review of a decision of February 29, 2000 (hereinafter "Decision") whereby the Virginia Employment Commission affirmed the decision of the Appeals Examiner holding that Petitioner left work voluntarily without good cause, and was therefore ineligible for unemployment benefits under Virginia Code § 60-618(1). Finding that the evidence in the Agency Record supports the Decision, the Court, for the reasons set forth below, affirms the Decision that Petitioner should be disqualified from receiving benefits.

Section 60.2-625 specifies that the Commission's findings as to the facts are conclusive and binding on this Court if there is evidence to support the Commission's findings and in the absence of fraud. In conducting its review of the Decision, the Court must consider the evidence in the light most favorable to the findings by the Commission. *See V.E.C. v. Fitzgerald*, 19 Va. App. 491 (1995), *quoting V.E.C. v. Peninsula Emergency Physicians, Inc.*, 4 Va. App. 621 (1987). Whether an employee has established good cause for a voluntary quit is a mixed question of law and fact, subject to review on appeal by this Court. *See Umbarger v. V.E.C.*, 12 Va. App. 431 (1991); *Shuler v. V.E.C.*, 9 Va. App. 147 (1989).

The Commission and reviewing courts must apply an objective standard to the employee's efforts to resolve a dispute before leaving the employment to determine if the employee acted in a "reasonable" manner. *See Umbarger*, 12 Va. App. at 435 (1991). While factors peculiar to the employee and the employee's situation may be considered, an employee may not rely on differences or conditions based solely upon unreasonable and purely subjective perceptions. *See id. at* 435, 436.

The evidence presented in this case establishes that the Petitioner voluntarily quit her employment on August 23, 1999. Petitioner was subject to a lay-off from her job as a weaver effective August 20, 1999, but she accepted the offer to extend her employment for two more weeks. (App. I, 8, lines 9-11.) Petitioner acknowledged that the work offered to her was consistent with her skills and at the same pay grade, however, without actually attempting the work, she concluded that she would not be able to perform the duties. (App. I, 9, 10.) Thus, the Court must decide whether the Commission erred, as a matter of law, in concluding that the Petitioner did not meet her burden of establishing good cause for leaving the employment. *See Actuarial Benefits and Design Corp. v. V.E.C.*, 23 Va. App. 640 (1996) (holding that where the employer proves a voluntary quit, the burden shifts to the claimant to prove that he or she left employment for good cause).

Although Petitioner did not know exactly the duties to which she would be assigned on August 23, 1999, she acknowledged that she had no medical documentation indicating her inability to perform the work assigned to her. (App. I, 13.) There is no evidence that her employer had any medical records on file indicating that she was subject to any work restrictions or limitations. The Commission's Decision stressed that Petitioner's subjective assessment that she was unable to perform the work was not enough; she needed to have evidence from a physician of a claimed disability. *See e.g., Suits v. Virginia Employment Commission*, Rec. No. 0227-95-3, September 5, 1995 (Unpublished); *Pizzino v. Virginia Employment Commission*, Rec. No. 2958-95-3, September 17, 1995 (Unpublished); *Webster v. Virginia Employment Commission*, Rec. No. 1323-95-4, April 2, 1996 (Unpublished). The Court agrees with Respondents that Petitioner's assessment of her physical capacity does not qualify as an objective evaluation of the facts and circumstances as required by the *Umbarger* standard.

Petitioner attempts to distinguish her case from *Suits* and *Pizzino* by asserting that she, unlike the parties in those cases, explained her concerns to her supervisor and offered to do other work before leaving. However, Petitioner's testimony does not establish that she responded in a reasonable manner to the prospect of the new assignment. Petitioner stated that she asked

her supervisor twice to be assigned to another assignment or continue with her previous one. (App. I, 12, line 26.) Yet, Petitioner explained that employer refused this request (or requests) in the context of an unrelated event at another time when the supervisor had refused to let her go to the first shift, after training another employee who was assigned to the job she wanted. (App. I, 12, lines 23-27, and 13, lines 1-8.) Although Petitioner did establish that she told her supervisor that she believed that she would not be able to walk between looms from one side of the factory to the other, this alone does not constitute a reasonable effort to resolve the matter before leaving on August 23, 1999.

Petitioner distinguishes *Webster* on the basis that, unlike the employee in that case, she did not quit her job contrary to a doctor's advice telling her that she would be able to continue working. However, this factor was not dispositive in the *Webster* decision. In *Webster*, while the Court of Appeals mentioned the fact that the employee had quit contrary to her doctor's advice, the court rested its decision on the fact that the employee had "demonstrated no medical reason sufficient to compel her to resign." Rec. No. 1323-95-4 at 2-3. Moreover, *Webster* is relevant to Petitioner's claim, because without attempting the new assignment, Petitioner could not demonstrate that she had sufficient medical reason to resign.

Petitioner could have avoided the risks of unemployment. She had the reasonable option of attempting to work on the new assignment before telling her employer that she would not be able to do so. Petitioner could have offered to undertake an alternative assignment before assuming that her knees would not allow her to complete the task given to her. Petitioner testified that after telling her supervisor that she could not handle traveling between looms, "I just got on my nerves," and left. (App. I, 12, lines 19-22.) Petitioner's contention that she could not manage her assignment did not require that she immediately terminate her employment. *See generally Whitt v. Race Fork Coal and V.E.C.*, 18 Va. App. 71, 76 (1994). Under *Umbarger*, Petitioner did not establish good cause to justify her sudden resignation, nor did she fulfill her duty to act in an objectively reasonable fashion to avoid unemployment. 12 Va. App. at 435.

Based on the substantial weight of the evidence, the Court finds that Petitioner's refusal to work without attempting to perform the assignment based on her own assessment of her physical condition was not a reasonable reaction to a new job assignment. *See Umbarger*, 12 Va. at 435. While the absence of a doctor's excuse is only a factor in determining whether resignation was the only reasonable alternative, *Manning v. Tidewater Regional Transit*, Commission Decision 13598-C (May 2, 1980), the Decision

is based on the proper application of the controlling law to the Commission's findings of fact, which are supported by ample evidence in the Agency Record.