COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Beales
Argued at Richmond, Virginia


CHAUNCEY F. HUTTER, INC., d/b/a
   PRO-TAX
                                                              OPINION BY
v.        Record No. 0537-07-2            JUDGE JAMES W. HALEY, JR.
                                                            NOVEMBER 6, 2007
VIRGINIA EMPLOYMENT COMMISSION


               FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                          Edward L. Hogshire, Judge

               John E. Davidson (Charles M. Henter; Davidson & Kitzmann, on
               brief), for appellant.

               Elizabeth B. Peay, Assistant Attorney General (Robert F.
               McDonnell, Attorney General, on brief), for appellee.


        Code § 60.2-618(1) states, in part, that "[a]n individual shall be disqualified for benefits

. . . if the Commission finds such individual is unemployed because he left work voluntarily."

The issue here for determination, apparently one of first impression before a Virginia court, is

whether an individual who enters into an employment contract for a specific term leaves

employment "voluntarily" when that term expires.  We conclude such an individual does not,

and, accordingly, is entitled to unemployment benefits.

                              FACTS AND PROCEDURAL HISTORY

        The facts are undisputed.

        Charmine M. Key ("claimant") entered into a written contract of employment as a

receptionist with Chauncey F. Hutton, Inc., d/b/a PRO-TAX ("PRO-TAX"), which prepared

state and federal tax returns.  The letter employment agreement reads in pertinent part:

"[B]eginning the week of January 10, 2005 . . . . Please keep in mind that we are a seasonal

business, and this employment is temporary.  However, based upon performance, we may offer you the opportunity to work with us until the end of this tax season on April 15, 2005."

Claimant successfully fulfilled her employment agreement.  In her statement to the Virginia Employment Commission ("VEC") on June 15, 2005, claimant reported that "[n]o work was available for her after the 15th."  PRO-TAX agreed, in testimony before a VEC appeals examiner on September 12, 2005, stating:  "Q.  Alright and then nothing else was available for her after [April 15, 2005]?  A.  No."

Claimant filed for unemployment benefits.  Counsel for PRO-TAX responded that "[claimant] effectively resigned because she knew the employment was temporary when she accepted it."

The VEC awarded benefits.  By decision dated September 13, 2005, an appeals examiner concluded:  "There was no voluntarily leaving on her part.  She worked through the agreed upon date and would have continued had work been available for her."

On July 27, 2006, the Commission affirmed:

> The fact that this claimant knew when she was hired that her job would only last until April 15, did not transform her separation at the end of the period agreed upon into a voluntary leaving from the layoff it actually was.  The fact remains that the claimant became unemployed because the employer no longer needed her services.  Such a layoff amounts to a no fault discharge.

The matter was appealed to the circuit court pursuant to the judicial review provisions of Code § 60.2-625, and by letter opinion dated January 23, 2007, the decision of the Commission was affirmed.  The court concluded:  "Although the Commission's decision appears . . . counterintuitive, this Court recognizes that it is obligated to presume that the actions of the administrative agency are correct."

STANDARD OF REVIEW

The issue for resolution is one of law, interpreting the word "voluntarily" within Code § 60.2-618(1). "Because statutory interpretation presents a pure question of law, it is subject to de novo review" by an appellate court. Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006). "In sum, pure statutory interpretation is the prerogative of the judiciary." Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996).

As this Court noted in Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 635, 593 S.E.2d 568, 571 (2004) (quoting Marbury v. Madison, 5 U.S. (1Cranch) 137, 177 (1830)), "[t]his axiom stems from basic principles of separation of powers. 'It is emphatically the province and duty of the judicial department to say what the law is.'" In such a determination, however, the judiciary is to "ascertain and give effect to the intention of the legislature." Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003).

Subsumed within this congruent principle of deference to legislative intent is an ancillary proposition applicable to administrative law. "It is well settled that where the construction of a statute has been uniform for many years in the administrative practice, and has been acquiesced in by the General Assembly, such construction is entitled to great weight with the courts." Dan River Mills, Inc. v. Unemployment Comp. Comm'n, 195 Va. 997, 1002, 81 S.E.2d 620, 623 (1954). See also Purolator Courier Corp. v. Clemons Courier Corp., 236 Va. 394, 400, 374 S.E.2d 42, 45 (1988); Branch v. Virginia Employment Comm'n, 219 Va. 609, 612, 249 S.E.2d 180, 183 (1978); Shifflett v. Virginia Employment Comm'n, 14 Va. App. 96, 98, 414 S.E.2d 865, 866 (1992).

ANALYSIS

Pervasive in decisions by Virginia courts is the conclusion that the Unemployment Compensation Act is to be liberally and remedially interpreted. Illustrative of that conclusion is

Ford Motor Co. v. Unemployment Comp. Comm'n, 191 Va. 812, 63 S.E.2d 28 (1951). There the Commission had awarded unemployment benefits to workers at Ford's Norfolk assembly plant who had been laid off because of a shortage of component parts. These parts were manufactured at Ford's River Rouge plant near Detroit, Michigan. The parts were unavailable in Norfolk because of a strike by workers at River Rouge. Then Code § 60-47(d) prohibited benefits if the unemployment resulted from a labor dispute "at the factory, establishment, or other premises" of the employee. This prohibition did not apply, however, if "separate branches of work" were "commonly conducted as separate businesses." Code § 60-47(d) (1950) (current version at Code § 60.2-612).

The Supreme Court of Virginia found Norfolk and River Rouge, though both owned and operated by Ford, to be "separate establishments" and affirmed the Commission's award of benefits. Ford, 191 Va. at 825, 63 S.E.2d at 34.

In so doing, the Court noted:

> The Unemployment Compensation Act was intended to provide temporary financial assistance to workers who become unemployed without fault on their part. The statute as a whole, as well as the particular sections here involved, should be so interpreted as to effectuate that remedial purpose implicit in its enactment.

Id. at 824, 63 S.E.2d at 33-34. See also Virginia Employment Comm'n v. A.I.M. Corp., 225 Va. 338, 346, 302 S.E.2d 534, 539 (1983).

This Court, in reliance on Ford, has repeatedly held that the Unemployment Compensation Act should be construed in a liberal and remedial manner. See Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988); Johnson v. Virginia Employment Comm'n, 8 Va. App. 441, 448-49, 382 S.E.2d 476, 479 (1989); Virginia Employment Comm'n v. Sutphin, 8 Va. App. 325, 327-28, 380 S.E.2d 667, 668-69 (1989).

- 4 -

With respect to the issue before us, we initially note that "[t]he burden is on the employer to prove that the claimant left work voluntarily." Actuarial Benefits & Design Corp. v. Virginia Employment Comm'n, 23 Va. App. 640, 645, 478 S.E.2d 735, 738 (1996).

This Court has addressed Code § 60.2-618(1) in factual situations distinct from those here involved. Whitt v. Race Fork Coal Corp., 18 Va. App. 71, 75, 441 S.E.2d 357, 359 (1994) (employee who accepts lump sum workers' compensation settlement, a condition of which he leave employment, has left work voluntarily); Shifflett, 14 Va. App. at 98, 414 S.E.2d at 866 (employee's refusal to work out a notice period, after being notified of a future discharge, is a voluntary leaving); Actuarial, 23 Va. App. at 646, 478 S.E.2d at 738 (discharge by employer with notice of pending resignation is not equivalent to a voluntary leaving for interim period).

In Shuler v. Virginia Employment Comm'n, 9 Va. App. 147, 151, 384 S.E.2d 122, 125 (1989), we held that where the uncontradicted evidence showed that claimant properly assumed that a three-day absence was authorized, and sought to return to work, that claimant had not left work voluntarily. In so doing, we stated that "[t]he term 'voluntary' connotes '[u]nconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself . . . [r]esulting from free choice.'" Id. at 150, 384 S.E.2d at 124 (citations omitted). See also Whitt, 18 Va. App. at 75, 441 S.E.2d at 359.

In Bowles v. Cities Service Oil Co., Decision S-10599-10306 (April 4, 1961), aff'd, Commission Decision 3764-C (August 17, 1961), claimant was employed as a messman on a ship owned by employer. An agreement between the Seafarers International Union and employer, incorporated into claimant's contract, limited his term of employment to 60 days if a

more senior crewman was available at the end of that term. That turned out to be the case, and claimant was replaced.[1]

In awarding unemployment benefits, the appeals examiner wrote:

> The claimant was hired for a definite period and, after working the period called for, was replaced by another crew member. He did not leave his job, nor did he quit. The terms of the Contract were at an end, and the work he had agreed to do was done. . . . [T]he Examiner is of the opinion that the claimant did not voluntarily quit his employment and would not be subject to the disqualifying provisions of Section 60-47(a) of the Act.[2]

Id.

Recognizing the Unemployment Compensation Act is to be liberally construed, referring to our definition of "voluntary" quoted above, and granting appropriate deference to a decision of the Commission related to the issue raised, we hold that when an individual leaves work solely because that individual entered into a contract of employment for a defined term, that individual does not leave work "voluntarily," as that word is used in Code § 60.2-618(1). In the instant case, on the undisputed facts, claimant did not leave work "voluntarily"; rather, work left claimant. "The involuntary unemployment for which the Act is designed to provide, presupposes a lack of available work." Unemployment Comp. Comm'n v. Tomko, 192 Va. 463, 469, 65 S.E.2d 524, 528 (1951). Accordingly, claimant is entitled to unemployment benefits.[3]

---

[1] In its decision granting unemployment benefits in the instant case, the Commission in part relied upon Bowles.

[2] We note that as now constituted, Code § 60.2-618(1) addresses this factual situation: "An individual shall not be deemed to have voluntarily left work solely because the separation was in accordance with a seniority-based policy." Chapter 559, 1983 Acts of Assembly added the quoted language.

[3] We note that a term employee must meet all eligibility criteria to receive unemployment benefits, as would a non-term employee. See Code § 60.2-612 et seq.

Principles of statutory construction support this conclusion. Existing Code § 60.2-615, dealing with educators, etc., and Code § 60.2-616, dealing with professional athletes, each deny unemployment benefits at the end of term contracts. "If a statute expressly excepts a class which would otherwise fall within its terms, the exception negates the idea that any other class is to be excepted." Reese v. Wampler Foods, Inc., 222 Va. 249, 252, 278 S.E.2d 870, 871 (1981) (citations omitted). See also Singleton v. Int'l Assoc. of Machinists, 240 Va. 403, 407, 397 S.E.2d 856, 859 (1990). If the legislature had likewise chosen to deny unemployment benefits to term employees as a class, they could have done so by legislation equivalent to Code § 60.2-615 and Code § 60.2-616. "The General Assembly could have included such prohibitory language . . . but did not do so." Allstate Insurance Co. v. Eaton, 248 Va. 426, 430, 448 S.E.2d 652, 655 (1994). We may not by interpretation, "add to a statute language which the legislature has chosen not to include." County of Amherst Bd. of Supervisors v. Brockman, 224 Va. 391, 397, 297 S.E.2d 805, 808 (1982). Further, as this Court held in Commonwealth v. Wallace, 29 Va. App. 228, 233-34, 511 S.E.2d 423, 425 (1999) (quoting Moreno v. Moreno, 24 Va. App. 190, 198, 480 S.E.2d 792, 796 (1997)):

> The words chosen by the legislature in drafting a statute derive meaning from both definition and context and, therefore, we divine legislative intent by construing an enactment as a whole, together with companion statutes . . . . [T]he doctrine of *pari materia* teaches that "statutes are not to be considered as isolated fragments of law, but as a whole, or parts of a great, connected homogenous system, or a simply and complete statutory arrangement."

Again, within the overall structure of the unemployment benefit statutes, the legislature chose not to deny such benefits to term employees as a class.

Our conclusion is likewise strengthened by decisions in other jurisdictions, in each of which the relevant statute denies benefits if a claimant leaves work "voluntarily," without good cause or its equivalent. See Anthony Adams AIA Architect v. Dep't of Employment Sec., 430

A.2d 446, 447 (Vt. 1981) ("At the end of the six weeks worked by the employee in this case, the job for him simply ceased to exist. He did not have the option of continuing to work. The claimant became unemployed because of a lack of work, not because he voluntarily left his position."); State Dep't of Indus. Relations v. Montgomery Baptist Hosp., Inc., 359 So. 2d 410, 413 (Ala. Civ. App. 1978) ("At the conclusion of his term of employment there was no further position as a pharmacy intern at the hospital available for Dudley. In short, the job with respect to Dudley simply ceased to exist. And in view of this fact, we conclude that Dudley's action in leaving the employ of the hospital did not constitute a voluntary leaving, but rather an involuntary termination."); Chicago Transit Auth. v. Didrickson, 659 N.E.2d 28, 33 (Ill. App. Ct. 1995) ("The acceptance of employment for a stipulated period does not necessarily result in a voluntary leaving at the end of the agreed time, and we are of the opinion that the remedial purposes of the Act are furthered by allowing benefits in such cases."); Kentucky Unemployment Ins. Comm'n v. Am. Nat'l Bank & Trust Co., 367 S.W.2d 260, 262 (Ky. Ct. App. 1963) ("Thus it is our opinion that a correct interpretation of the statute is that an employee who accepts a job which he knows in advance to be temporary does not voluntarily leave when the job ceases to exist."); Loftis v. Legionville Sch. Safety Patrol Training Ctr., Inc., 297 N.W.2d 237, 239 n.5 (Minn. 1980) ("Disqualifying a person for working at a temporary position is inherently contrary to the policies of the statute."). See also Walker Mfg. Co. v. Pogreba, 316 N.W.2d 315 (Neb. 1982); City of Lakin v. Kansas Employment Sec. Bd. of Review, 865 P.2d 223 (Kan. Ct. App. 1993).

POLICY

On brief both parties argue issues of policy.

Appellant states on brief that "it is worth noting that the result of [reading the statute as appellant deems correct] is favored by policy as well. . . . If the VEC's decision in this case

stands . . . in return for providing good seasonal jobs . . . [employers] will be rewarded with the highest, most burdensome unemployment tax possible."[4]

The VEC responds, "From a policy standpoint, if the Commission were to adopt the policy that the Petitioner describes, unemployed individuals would be discouraged from taking part-time work because they would be excluded from obtaining unemployment compensation."

We do not address such arguments, because "[t]he calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility." Pers. Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 272 (1979). A court may not "second-guess the lawmakers on matters of economics, sociology and public policy. . . . Those considerations belong exclusively in the legislative domain." Infants v. Virginia Hous. Dev. Auth., 221 Va. 659, 671, 272 S.E.2d 649, 656 (1980). Regardless of whether it "may or may not be better public policy" to interpret Code § 60.2-618 as either appellant or the Commission urges, "such judgments are not ours to make." Washington v. Commonwealth, 46 Va. App. 276, 283, 616 S.E.2d 774, 778 (2005) (*en banc*).

                                                                        Affirmed.

---

[4] We note the legislature has developed a statutory scheme to provide unemployment benefits to strictly defined seasonal agricultural labor. See Code §§ 60.2-202, 60.2-214 and 60.2-219.