Sonya R. Hagood

v.

Virginia Employment Commission
and The Whitt Group

February 22, 2011

Case No. CL10-1554

BY JUDGE CLIFFORD R. WECKSTEIN

Sonya Hagood contends that the Virginia Employment Commission erred when it found that she is not entitled to benefits under the Virginia Unemployment Compensation Act because she quit her job "voluntarily, without good cause." *See* Virginia Code § 60.2-618. ("An individual shall be disqualified for benefits . . . if the Commission finds such individual is unemployed because he left work voluntarily without good cause.") The Act is codified in Virginia Code §§ 60.2-100 through 60.2-635. Her petition for judicial review brings the matter before this court, to "be heard in a summary manner at the earliest possible date." Va. Code § 60.2-625(A). All prerequisites for review have been met. The court heard oral arguments on January 21, 2011. At the request of Ms. Hagood, who represents herself, those arguments were made by telephone.

It was the duty of the Commission and its deputy commissioners, hearing examiners, and special examiners to determine what the relevant facts were; the Commission, under Virginia's statutory scheme, decided what weight and effect to give to the evidence before it. So long as the record contains evidence upon which the Commission could have based its factual determinations, the court is bound by the Commission's fact-finding. Va. Code § 60.2-625 (A) ("In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.") There are no allegations of

fraud in this case. *See Chandler v. Schmidt Baking Co.*, 228 Va. 265, 268, 321 S.E.2d 296 (1984) ("It is not our function, but the Commission's, to weigh conflicting evidence, and when there is credible evidence to support the Commission's findings, we are bound thereby.") The ultimate issue, "whether an employee voluntarily quit without good cause is a mixed question of law and fact reviewable on appeal." *Snyder v. Virginia Empl. Comm'n*, 23 Va. App. 484, 491, 477 S.E.2d 785 (1996).

Ms. Hagood seeks unemployment compensation benefits from her employment with The Whitt Group, Inc., her employer for nearly six years. (Although both Ms. Hagood and the employer's president, Joy Whitt, used a different name, Prosource of Roanoke, in initial filings, there is no contest to the Commission's finding that The Whitt Group, Inc., is the relevant employer.) Ms. Hagood left her job in January of 2010, approximately eleven months after being diagnosed with multiple sclerosis ("MS."). Her employer was aware of her medical condition.

Ms. Hagood was, according to Ms. Whitt, a valuable employee. Her job responsibilities encompassed accounting, payroll, and office management for a company that employed as many as six to seven persons. Record at 2 (benefits application), 95 (corporate president's testimony), 117. Testimony, as well as copies of e-mails and other documents submitted to the Commission demonstrate that, before and after the MS diagnosis, Ms. Hagood was frustrated because other employees failed to perform their jobs correctly and, particularly, failed to properly fill out and use their time cards, causing her additional work. *See, e.g.*, Record at 108-09, 113-14. Though the corporation's president had talked with Ms. Hagood about shifting her to a job as an "expediter," a job that Ms. Hagood thought would have been more stressful than the one she held, her job duties did not, in fact, change after her MS diagnosis. Record at 110 *passim*.

On September 24, 2009, Ms. Hagood sent the following e-mail to Ms. Whitt, the employer's president:

> I have no desire to take on anymore than I already have on my plate. In all honesty Joy, I think I'm going back to Michigan. It's just too much anymore. I will not ever leave you hanging or anything negative in any way whatsoever and I hope you know and believe that. I will always be only a phone call away. And it's not like something I plan to do over night, but I am going home before Madi starts school next year — I'd like to let her finish out the year, have time to find and train replacements for all of my jobs, find a job up there to go to. . . . It's a lot, but I've made the decision and talked to Madi last night about it so it's kinda' done. So now you let me know what I can do to make this as easy as possible on you.

> I'm working on that Steve thing right now. I'll let you
> know if I get it to go through.

Record at 129 (original quoted exactly; ellipses in original).

From that point, Ms. Hagood continued to perform her job and keep the employer informed of medical appointments and other obligations of her personal life, including her need to find a new neurologist and primary care physician. As Ms. Hagood wrote in Exhibit 5, her "notice was given on 092409 and [she] communicated with Ms. Whitt and [her] replacement that [she] would close out 2009 and the other girls would be able to take over." Her last day of work was January 2, 2010. Had she not resigned, continuing work would have been, and was, available for her. Record at 73.

In arguing her position, Ms. Hagood states — and this is obvious from the record — that she had no intention of applying for unemployment compensation when she left her job. She assumed that, when she resettled in Michigan, she would be able to find work. At the time that she resigned, she had not secured other employment.

When asked, by the V.E.C. hearing examiner, "Were you advised by a medical professional to resign," Ms. Hagood responded "no; not specifically." Record at 27. She testified that she was, however, told to limit "undue stress." *Id.* On her application for benefits, Ms. Hagood answered "No" to the question "did your doctor advise you to quit your job." Record at 2.

Consistently with that testimony, the record does not contain any health-care professional's report or record documenting a health-based need for Ms. Hagood to resign her position. Ms. Hagood argues that, when the V.E.C. asked her for statements from a medical professional substantiating her medical need to leave her job, she was hamstrung because (a) her neurologist had — because the doctor was leaving the Roanoke area — notified her patients that she could no longer serve them; and (b) Ms. Hagood had moved to Michigan, had no health insurance that would pay for a doctor's visit, and was unemployed without resources to pay for a doctor's examination or a doctor's report. Assuming (but not deciding) that these are facts, properly before the Commission and the court, they are of scant relevance in light of her concession that she was not, in fact, told to resign by a medical professional.

On her application for benefits, Ms. Hagood was asked to "Explain in detail what caused you to quit on this date." She answered:

> Was working 3 other jobs w/ProSource, single Mom, no
> family in VA, diagnosed w/MS, health was deteriorating. I had
> no choice but to move back home to MI w/family and try and
> find a job here, to no avail.

Record at 2.

Asked on the application "What efforts did you make to resolve this problem before you quit," Ms. Hagood answered:

> There were no "efforts" available for resolution. I was advised to eliminate stress to reduce flare ups w/MS, but can't qualify for "total" disability. I simply had too much on my plate w/ the job(s).

*Id.*

In the context of an unemployment compensation claim:

> The term "voluntary" connotes "unconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself . . . resulting from free choice." An employee's intention to quit may be discerned from words or conduct inconsistent with the maintenance of an employer/employee relationship.

*Whitt v. Race Fork Coal Corp.*, 18 Va. App. 71, 75, 441 S.E.2d 357 (1994), *rehearing and en banc rehearing denied*, April 22, 1994 (citations omitted).

There was more than ample evidence to support the Commission's factual determination that Ms. Hagood left her job voluntarily. Since Ms. Hagood's resignation was voluntary, she bore the burden of proving that she left her job for "good cause." *Actuarial Benefits & Design Corp. v. Virginia Empl. Comm'n*, 23 Va. App. 640, 645, 478 S.E.2d 735 (1996).

> When determining whether good cause existed for a claimant to voluntarily leave employment, the commission and the reviewing courts must first apply an objective standard to the reasonableness of the employment dispute and then to the reasonableness of the employee's efforts to resolve that dispute before leaving the employment. In making this two-part analysis, the claimant's claim must be viewed from the standpoint of a reasonable employee. "Factors that . . . are peculiar to the employee and her situation are factors which are appropriately considered as to whether good cause existed."

*Whitt*, 18 Va. App. 75-76 quoting and citing *Umbarger v. Virginia Empl. Comm'n*, 12 Va. App. 431, 435-36, 404 S.E.2d 380 (1991).

As noted above, Ms. Hagood testified that her job was more stressful than it otherwise might have been because other employees failed to perform as they (in Ms. Hagood's view) should have performed. Accurate and timely completion of time cards was a particular concern. She asked for

help, she said, "via multiple e-mails, multiple meetings, multiple comments. Even the employees were sent e-mails to ask, please stop doing this sloppy work that is making me do three steps that you could have done right once." Record at 108.

Ms. Whitt testified that, when Ms. Hagood told her about these concerns, she understood Ms. Hagood to be complaining and to be asking Ms. Whitt to try to intervene with other employees, to get them to improve their compliance. She did not understand that Ms. Hagood was asking for her job to be altered. *See* Record at 114-17. Ms. Hagood, to illustrate the nature of her complaints, called attention to e-mail messages and requests that she had sent. Although there is no question that Ms. Hagood had for some time been upset by the sloppy work habits of fellow employees, these particular e-mails were written and sent some time after Ms. Hagood's e-mailed her resignation. Record at 117.

The Court of Appeals of Virginia has quoted with approval a statement by a Virginia Employment Commission Appeals Examiner:

> The Commission has adopted and held firmly to the premise that an employee, who for some reason, becomes dissatisfied with his work, must first pursue every available avenue open to him whereby he might alleviate or correct the condition of which he complains before relinquishing his employment. Stated in other terms, the claimant must have made every effort to eliminate or adjust with his employer the differences or conditions of which he complains. He must take those steps that could be reasonably expected of a person desirous of retaining his employment before hazarding the risks of unemployment.

*Lee v. Virginia Empl. Comm'n,* 1 Va. App. 82, 85-86, 335 S.E.104 (1985). "It is well settled," the Court said, "that where the construction of a statute has been uniform for many years in administrative practice, and has been acquiesced in by the General Assembly, such construction is entitled to great weight with the courts." *Id.*

Ms. Hagood, regrettably, did not take any of the steps that could be reasonably expected of someone who wanted to stay in her current employment. She had, as she wrote, "made the decision." Record at 8. She made the perfectly understandable decision, as a single mother with no family in Virginia, suffering from MS, to return to Michigan where she had family and a support network. *See* Record at 2. It is no criticism of her, or of her choice, to say that the Commission committed no error of law in its determination that she is disqualified from receiving unemployment compensation benefits.

For the foregoing reasons, it is the judgment of this Court that the Commission's determination be, and hereby is, affirmed.